Good morning. I would like to reserve three minutes for rebuttal. In light of the government's Rule 28J letter, I'd like to move directly to insufficiency. Do we need to address any of the sentencing issues in this case, given the concession that resentencing is necessary? I believe the acceptance issue is still on the table. Although there's going to be a resentencing hearing in this case, right? So I would be satisfied if there would be a plenary resentencing and the acceptance would be on the table. That's what we usually do, is just plenary, open resentencing. Is there any doubt about it? Then there's no need to address the acceptance. Let me ask you something about the assisting, whether the evidence was sufficient. Why couldn't the jury conclude that considering her position, being the main person responsible for payroll, considering her compensation, as much as almost a quarter of a million a year, plus a couple of Mercedes, that they just didn't believe her when she said, I thought that lying on And why couldn't the jury just believe that? They didn't have to believe her. They didn't even have to believe her if her testimony was uncontradicted. I'm assuming that they didn't believe her. But the record on plenary review, in my review, still does not show that the government proved beyond a reasonable doubt and not just a modicum of evidence. On a sufficiency claim now that you're here, all reasonable inferences have to be drawn in the government's favor. She presented a good faith defense at trial, right? Yes. Was the jury instructed on the good faith defense? Yes, it was. And the jury rejected that, right? So tell us why there's insufficient evidence, viewed through the proper standard review. Yes, I don't see in the record, in the testimony of Jason Harvey, or Colette Fox, or David Nichols, or Brandon Littlefield, I don't see in the testimony of anyone, or in the testimony of Ms. Browning, that the government proved beyond a reasonable doubt that she had the forms. Well, there's that testimony about the email, after she's told to do it right, and she says, filed as is, comma, totally legit, question mark. And why couldn't the jury read that as, filed as is? Totally legit? Like, are you kidding? I addressed that in the reply. That argument actually, I believe, or that email, I believe, actually supports Ms. Browning. It could be argued that way. I understand that, but the question is whether the jury could read it the other way. The jury, they could. But that still doesn't show that she had the specific intent to defraud the government in the enforcement of its tax laws. It seems to me the problem is, and I think either or both the other judges have touched on this, the jurors saw her testify, listened to her story, and I think it's a fair inference to conclude, as the judge did, that she was lying. She wasn't telling the truth. And I don't know whether, in this case, false in one, false in anything, in terms of evaluating testimony, that if you find a witness to testify falsely in one part, you can consider whether the witness has testified truthfully at all. And it seems to me, looking at this, that that's what happened. She took the risk of getting on the stand. She told her story. Thirteen people in the courtroom clearly didn't believe it. And I think, add that up, it seems to me that there's enough there. I mean, I think that's put it all together. I think one has to assume that in this case. Yet, ironically, there's no testimony in this case other than Ms. Browning's as to what her intent was, except the fact, which the government does not dispute, that she refused to sign the false forms. She refused to sign them under a penalty of perjury. And she was asked that, and she testified about that. So that act of refusing to sign the forms, which Jason Harvey then signed, is a window into her intent. That is a good defense argument, and it could have sold. It's a pretty solid and possibly persuasive one, but in this case it didn't persuade. Let me give you a hypothetical to illustrate my concern here. Let's suppose that all the jury gets is that a person made $100,000 a year from his business during the relevant years in net profits, and there's no question that's the net profits. And let's suppose he files income tax returns saying that he got income from his business of $20,000 a year during those years. The jury knows from various other evidence this person probably knows something about how to fill out an income tax return. Why wouldn't that be sufficient by itself to show willful evasion? That might be. It's a different situation. These are not her forms. These are global forms. Okay. But she didn't believe that they were truthful, did she? They were accurate? Did she believe that they were accurate? No, she didn't, and she testified to that. Okay, so how is that different from the hypothetical? The income, there's no quid pro quo. She got to keep her job.  She was quite well paid. That was the argument by the government. I still don't think, and I don't see, and I'm out of time, how it rises to the necessary level. All right. You can save the rest of your time if you wish. Thank you. Let's hear from the government. Good morning, and may it please the court. Jean-Claude Andre on behalf of the United States. I'm glad that the court received our concession letter. I apologize for when it was submitted, but as the court is probably aware, we have to confess error even based on a recently decided controlling precedent. We usually send resentencing matters back open. Is there any need that you see in this case to address the other sentencing issues that were raised? I think there was an obstruction issue, which the government conceded on. There was acceptance of responsibility was on the table, and substantive unreasonableness. Do we need to reach those issues in our disposition? Under this Court's en banc decision in Matthews, the Court need not reach them, but the Court can reach any so as to advise the district court and potentially minimize further appeals. So if the court would like me to address those issues at all, I'm happy to. I can address them at the back end or address them now or just go straight to my response. Well, no, because I was thinking on acceptance of responsibility that would be up to the district court to then possibly take arguments anew, and it's a new sentencing hearing. Sure. Right. Like I said. I can't see why we would address them. I mean, the more things we decide, the more mistakes we make, assuming we have some error rate. We don't want to muck it up. Thou say'st it. Okay. I confess that when I read the rare decision that actually does intuitorally reach issues that will come back anyways, that I'm a little bit surprised, but that does seem to be the exception. Matthews is the seemingly controlling standard of this Court, and it has a very strong presumption in full. I detect, I sense a degree of agreement that the three of us are not likely to address that issue. I can't speak for the other two, but from their comments, that's certainly how I'm inclined to do it. It's the Court's pleasure, of course. Okay. What did you have to show that she knowingly and willfully assisted in the preparation and filing of fraudulent tax returns? We had abundant evidence here, in fact, if not overwhelming evidence. Just list it. Well, as you noted at the outset of Mr. Price's presentation, she had her own payroll company. She was paid $200,000 per year to be the payroll director. Her husband received $80,000 to $90,000 per year. He was a ghost employee, as the Harveys admitted. There were Mercedes provided to both her and her husband. Company funds were used to pay her personal credit card. And generally, I guess she should have known what she was doing, given that she started working in payroll for Michael Harvey in either 1997 or 1998. Additionally, we know a fair amount about her character on cross-examination. She admitted that she discussed putting a bogus degree on her resume. She didn't disclose benefits on her personal returns, namely the Mercedes and the payment of the credit card bills. And that she generated with Martha Chacon a bogus check stub to disclose and deceive her mortgage lender. But, of course, that's not all. That's just kind of the general stuff about her. On top of that, and I think this is probably the key point here, this is not an evasion case. Had this been an evasion case, then perhaps defendants' defense, relying on Form 941C, might have some salience. This was essentially a false statement case, where she was charged with making a false statement on Government's Exhibit 1, which is the actual 940 form itself, and it has a penalty of perjury disclaimer. That disclaimer right there puts her on notice that whoever signs that has to be truthful. And here she was convicted of aiding and abetting the Harvey's false statements. So we think that's sufficient right there. I mean, this Court could look to its precedents from other willfulness contexts, where there are disclaimers on forms and the defendant signs them. And the Court has said that under Jackson, that presence of that disclaimer is sufficient to make the conviction stand. Oh, I missed something in what you just said. Who signed what? So it was Jason Harvey who actually signed the 940. And on line 5, there's a, you know, I declare under penalty of perjury that the foregoing is true and correct. Jason signed. She didn't sign it. Right. She prepared it for Jason's signature, Your Honor. So the argument is that she must have known when she prepared it for his signature that he would sign it, and there are all these other indications that she would know just what she was doing. Absolutely. That's it. In other words, it's like the fellow who puts the gun in the robber's hand. It's aiding and abetting. Exactly. But it provides, she created the mechanism whereby the fraud or the evasion or whatever you want to call it occurred. She created the instrument and then turned it over. She may have been reluctant to sign it. She said perjury. Oh, boy, I don't want to get charged with perjury. Okay. She should have known, you know, as a matter of law, that lots of other things she'd get charged with. That's exactly right, and that's why I think this case was perfectly charged and why we don't really have a Jackson problem here, because there was abundant evidence that the defendant acted willfully when she prepared this form for Jason Harvey's signature. Am I mistaken in recalling that there was actually an admission by her that she knew the numbers she put down were, she knew the numbers were false? Yes. And that's what her good faith defense was all about. Well, yeah, Jason dictated the numbers to me. I know they're false. But I thought that I could still, if we still amend them by the end of the year or whatever time frame she testified to, that it's somehow then not in violation of the law, and the jury was instructed on that defense. Yes. I mean, so that was her theory, and the jury rejected it. We believe soundly rejected it because, again, in this case, she's hearing something from Jason, do this on this form, and she's reading the form that says this form has to be accurate. And so the jury is free to decide whether they believe her or whether they want to believe the abundantly logical inference that when she's looking at that form that says this has to be true and correct, I can't make something up just because Jason Harvey tells me to. And so, again, that goes back to my point earlier, where if this was an evasion case, the instructions on the Form 941C might have some relevance, because  And so if you make it up later, maybe this, you know, ambiguous wording in the instructions would say that that's okay to make it up later. But here we're talking about a form that when it goes in, you have to submit with your best information. You can't submit knowingly false information, and she admitted that the information that she put on that form for Jason Harvey's signature was knowingly false. Excuse me. I assume that, again, I don't know, but I assume that the jury was given a standard charge on how it goes about determining one's intent. You can't read a person's mind, so therefore you look at all the facts and circumstances and so forth and so on. Yes. Yes. And just to, I guess, finish off the list that Judge Kleinfeld left before, and then I'm happy to yield back to Mr. Price, we also, of course, know from the defendants' exchange with Agent Collette Fox in 2005 where she admitted that the false 940 charged in Count 4. So she's not only on notice from the form that she has to be true and correct in filling it out for Jason Harvey's signature, she's also told and confirmed to an IRS agent that these forms have to be accurate, and yet she goes and does it again. And then, of course, she admitted to the Harveys that she wouldn't sign them themselves because of the perjury disclaimer, which shows that she knew it was there and she didn't want to, you know, be squarely in the crosshairs and charge not with aiding and abetting but with the charges that the Harveys were charged with. So in a way, your best argument is the defense argument. Yes. Her refusal to sign. No, I mean, it is a very strong piece of evidence for us. Her refusal to sign. Your argument to the jury, you argue this to the jury, that her refusal to sign shows that she knew perfectly well that whoever signs this false form gets in big trouble? Yes, we argued that to the jury, Your Honor. And then I guess the last two items, she clearly knew how to do them right. In 2005, at the same time that she was preparing the false 940s charged in counts 3 and 4, she was preparing perfectly accurate ones for the company that was her own employer, that implicated her own withholding and potentially her own refunds. And then finally, we have that 2007 e-mail that, Judge Kleinfeld, you mentioned earlier, where she's querying whether the Harveys really want legit returns instead of presumably illegitimate ones like she had done previously. And based on all of that evidence, we think it was really an overwhelming case. Once the jury returns the verdict and credits it. If the court has no further questions, I'm happy to... Judge Kleinfeld? Judge Card? No, thank you. Thank you. All right, thank you. May it please the court. So I don't think any of that evidence really answers the question. And I would also like to observe that Ms. Browning did not file any more 940 ones after the one that was filed in count 4. She refused. So I think that also shows her intent. With that, I have nothing more. Thank you. Thank you very much. Both sides for your arguments today. The matter is submitted for a decision by this court.
judges: Carr, Kleinfeld, Nguyen